UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY SHANE JONES, | ) | CASE NO.  1:25-cv-00873 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION** |
| SECURITY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

Before the Court is Magistrate Judge Reuben Sheperd's Report and Recommendation

("R&R") recommending the Commissioner of Social Security's decision be affirmed.  (Doc. 10.)

Plaintiff Gregory Shane Jones ("Jones") timely filed an objection (Doc. 11), and Defendant

Commissioner of Social Security ("Commissioner") responded (Doc. 12).

For the following reasons, Jones' objections are OVERRULED.  The R&R is

ACCEPTED and ADOPTED, and the Commissioner's final decision is AFFIRMED.

I.      BACKGROUND

Jones did not object to the factual record and procedural history in the R&R.  (Doc. 10.)[1]

Notwithstanding, the Court summarizes the facts pertinent to his objections.

A.      Medical History

1.      Physical Impairments

On October 16, 2018, Jones underwent multiple hip procedures, including a right hip

arthroscopy, to address right-side hip pain.  (Doc. 5 at 303.)  During follow-up visits in

November and December 2018, his right hip was noted as showing improvement.  (*Id.* at 317,

---

[1] For ease and consistency, briefing citations reflect the electronically stamped CM/ECF
document and PageID# rather than any internal pagination.

319, 321.)  He also discussed increasing pain in his left hip.  (*Id.* at 317.)  An MRI was conducted which revealed tearing of the acetabular labrum.  (*Id.* at 319.)  During a January 2019 visit, Jones indicated his right hip was continuing to improve, although it became sore when he was "working 10 hour jobs."  (*Id.* at 321.)

On April 15, 2019, Jones claimed he returned to 10-hour workdays which resulted in increasing hip pain and soreness.  (*Id.* at 324.)  In July, he complained of a high level of pain in his left hip despite physical therapy and using anti-inflammatories.  (*Id.* at 325.)  An MRI revealed a labral tear.  (*Id.*)

On August 28, 2019, Jones underwent a similar procedure on his left hip.  (*Id.* at 305.)  Six weeks later, he was noted as doing "really well" and his left hip pain had significantly improved.  (*Id.* at 330.)  In December, he was noted as having full range of motion in his left hip and was happy with the outcome of his surgery.  (*Id.* at 332.)  By March 2020, he had no pain on his left side although he reported pain in his right hip that was different than what he experienced prior to his 2018 surgery.  (*Id.* at 334.)  An x-ray revealed a "large CAM type deformity" and a "partial sacralization of L5 on the right consistent with a transitional vertebra."  (*Id.* at 339.)  He was given injections of lidocaine and Depo-Medrol.  (*Id.* at 334.)

On July 21, 2020, Jones underwent a functional assessment at the Cleveland VA Medical Center where he reported "almost constant pain" in his right hip along with groin and inner thigh pain.  (*Id.* at 644.)  The assessment revealed he could perform all activities of daily living without assistance.  (*Id.* at 648.)  He was recommended to return to physical therapy for his right hip and lumbar spine.  (*Id.*)  Throughout 2020, Jones attended physical therapy.  (*See id.* at 515-22, 535-52.)

On December 9, 2020, Jones underwent an MRI which showed multiple bulging discs and degenerative changes in the L4/L5 region which "matched his pain concerns."  (*Id.* at 495.) On November 4, 2021, Jones underwent a new functional assessment.  (*Id.* at 463-68.)  He reported constant pain with his lumbar spine and hips.  (*Id.* at 464.)  His pain was exacerbated during weight bearing activities and when he sits for greater than 25 minutes.  (*Id.*)  He was noted as having a normal range of motion and 5/5 strength throughout, with a worsening gait. (*Id.* at 465-66.)  He was also assessed as having right sided S1 radiculopathy and bilateral labral pathology of his hips.  (*Id.* at 468.)

On August 11, 2022, an x-ray was taken of Jones' lumbar spine, pelvis, and right hip, which revealed moderate disc space loss at L5-S1 and normal alignment, along with lumbosacral arthritis.  (*Id.* at 685.)

### 2.      Mental Impairments

On April 8, 2019, Jones met with an internist at the Cleveland VA Medical Center who referred him for headaches potentially related to a traumatic brain injury ("TBI").  (*Id.* at 603.) He believed these headaches may have been the result of an assault in 2003 or an incident in 2016 where he hit his head on a table.  (*Id.*)  Later that month, he attended a TBI consultation where he reported daily headaches and memory problems.  (*Id.* at 595-99.)  He claimed to also experience photophobia, nausea, dizziness, hearing difficulty, tinnitus, and difficulty sleeping. (*Id.* at 597.)  These two incidents were assessed as "mild TBI/concussion[s]" and he was noted as having a very good prognosis.  (*Id.* at 598.)

On June 6, 2019, Jones attended a mental health consultation at the Cleveland VA Medical Center where he reported decreased energy and motivation, disturbed sleep, fluctuating appetite, and that he had experienced a recent panic attack at his daughter's birthday.  (*Id.* at

586.)  At a later consultation, he reported his stress had decreased because he had resolved a divorce and had graduated from college.  (*Id.* at 570-72.)  He also discussed how his post-traumatic stress disorder ("PTSD") had affected a recent vacation.  (*Id.*)

On June 16, 2021, Jones was referred to the SHARE Military Initiative program for evaluation of his symptoms related to his TBIs and PTSD.  (*Id.* at 432.)  There, he discussed an incident in 2000 where he was near percussion from gunfire for a sustained period, along with the head injuries he sustained in 2003 and 2016.  (*Id.* at 432-33.)  He reported headaches, decreased short and long-term memory, irritation from overstimulation, decreased motivation, and dizziness, among other symptoms.  (*Id.*)  He was assessed with a mild TBI, PTSD, posttraumatic headaches, and insomnia, among other diagnoses.  (*Id.* at 437, 440.)

On July 16, 2021, Jones underwent a VA intake assessment and was noted as being anxious, on guard, and experiencing broken sleep and memory impairments.  (*Id.* at 702.)  He reported a history of depression, triggered by panic and anxiety.  (*Id.* at 708, 711.)  He was also noted as experiencing depression, anxiety, anger, difficulty managing stress, severe discord at home, and difficulty connecting with any civilian.  (*Id.* at 711.)

On January 31, 2022, Jones reported compliance with medications and improved sleep.  (*Id.* at 381.)  In May, he reported he was active in his church and in a stable mood.  (*Id.* at 380.)  He stated "I'm doing amazing in managing my pain."  (*Id.*)

On May 15, 2023, Jones claimed he had been fired from his job because he used physical means to discipline an unruly child, although he was amnestic of the incident and its aftermath.  (*Id.* at 1113.)  His mood declined after the incident, although it improved after his he and his wife decided to start a new business together as travel agents.  (*Id.*)

On May 10, 2024, Jones reported he was working part-time at a local YMCA and denied new PTSD concerns.  (*Id.* at 1071.)  He also denied feeling hopeless, helpless, or suicidal.  (*Id.*)

**B.        Treating Source and Consultative Examiner Opinions**

On July 7, 2020, Jones underwent a psychological consultative examination with Dr. Bryan Krabbe ("Krabbe") where he was diagnosed with major depressive disorder, unspecified anxiety disorder, and an unspecified alcohol-related disorder which was in remission.  (*Id.* at 352-58.)  He described a decrease in attention and concentration that could result from his depression and anxiety.  (*Id.* at 357.)  Krabbe also determined his mental health problems would impact his work performance, especially when presented with critical supervisory feedback and maintaining appropriate co-worker relationships.  (*Id.* at 358.)  His anxiety may also compromise his ability to respond to work pressures and lead to an increased likelihood of agitation.  (*Id.*)

On August 11, 2022, Jones saw Dr. Dorothy Bradford ("Bradford") for a physical consultative examination which found normal strength in all muscle groups and normal range of motion in all joints.  (*Id.* at 689.)  She determined Jones has mild degenerative joint disease of the right hip, a normal gait, and that he can perform sedentary activity.  (*Id.*)

Jones underwent multiple evaluations from Supervisory Physical Therapist Christopher Wood ("Wood").  (*Id.* at 466-68, 648, 802-03, 807-10.)  On July 21, 2020, Wood determined he was capable of performing all activities of daily living without assistance.  (*Id.* at 648.)  At a later appointment in November, Wood performed a functional assessment of Jones which found he tested into the sedentary work category.  (*Id.* at 466-68.)  He was assessed as having a worsening gait and multiple physical and environmental limitations.  (*Id.*)  Separately, on November 10, 2021, Wood completed a Physical Residual Functional Capacity ("RFC") Questionnaire which found Jones was capable of low stress jobs, could sit for up to 20 minutes, stand for 5 to 10

minutes, and that he would be absent from work on average 2 to 3 days per month.  (*Id.* at 809-10.)  On April 11, 2023, Wood completed a Medical Impairment Questionnaire Regarding Illnesses, Physical Abilities, and Limitations where he determined Jones suffered from moderate to severe pain, would be "off task" from work due to his impairments 25% or more of the time, and that his impairments would lead him to be absent from work 3 to 4 days a month.  (*Id.* at 802-03.)

Jones also received several psychological evaluations from Dr. Dietrich Schelzig ("Schelzig").  (*Id.* at 804-06, 811-12, 1032-33.)  On October 5, 2021, Schelzig completed a Medical Source Statement of Ability to do Work-Related Activities, finding Jones was slightly impaired with respect to his ability to understand and remember detailed instructions, carry them out, and make judgments on simple work-related decisions.  (*Id.* at 811.)  In addition, his punctuality and attendance would be impaired, along with his abilities to interact with supervisors, the public, and co-workers.  (*Id*. at 812.)  On March 21, 2023, Schelzig completed a Mental Impairment Questionnaire specific to Jones' PTSD, finding he would be off task at work 15% of the time and would miss work due to his PTSD symptoms more than 3 times per month.  (*Id.* at 804.)  He would be moderately impaired in completing tasks in a timely manner, avoiding distractions while working, and working a full day without needing the allotted number of rest periods afforded.  (*Id.* at 805.)  On November 13, 2024, Schelzig completed a Mental Impairment Questionnaire that found Jones would be off task 15% of the time due to his impairments, be absent from work 1 or less days per month, and have mild limitations in completing work at a consistent pace, in a timely manner, and in regularly attending work, among other categories.  (*Id.* at 1033.)

C.      **State Agency Reports**

On June 29, 2022, state agency reviewing psychologist Dr. Karla Delcour ("Delcour") found Jones was moderately impaired with respect to interacting with others, to concentrate, persist, or maintain pace, and to adapt or manage himself.  (*Id.* at 91.)  He was moderately limited in carrying out detailed instructions, maintaining attention and concentration, sustaining an ordinary routine without special supervision, and in completing a normal workday and workweek.  (*Id.* at 95.)  He was also noted as being able to work in a non-crowded environment and able to complete short cycle work tasks that are routine and do not require him to work at a fast pace.  (*Id.*)  On reconsideration, Delcour's findings were affirmed by Dr. Kristen Haskins ("Haskins"), with additional moderate limitations noted in Jones' ability to accept instructions and respond appropriately to criticism from supervisors, and his ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  (*Id.* at 112-122.)  On August 16, 2022, state agency reviewing physician Mehr Siddiqui ("Siddiqui") found Jones was limited to light exertion and could sit or stand for 6 hours during an 8-hour workday.  (*Id.* at 93-94.)  He was occasionally limited in climbing ramps and stairs, stooping, kneeling, crouching, and crawling, and frequently limited when balancing.  (*Id.* at 93.)  On reconsideration, Siddiqui's opinion was affirmed with no changes.  (*Id.* at 121-22.)

D.      **Application for Supplemental Security Income and Disability Insurance Benefits**

On June 10, 2022, Jones applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  (*Id.* at 197-203.)  He alleged a disability onset date of October 9, 2019.  (*Id.* at 197.)  On August 16, 2022, his claims were denied.  (*Id.* at 37.)  Reconsideration was denied on November 3, 2022.  (*Id.*)  On November 15, 2022, Jones filed a written request for a hearing before an Administrative Law Judge ("ALJ").  (*Id.*)

### 1.     First Hearing

On April 26, 2023, Jones, who was represented by counsel, testified before an ALJ.  (*Id.* at 56-82.)  He testified he had served in the military for 21 years and previously worked at TT Electronics as a senior test technician before his hip surgeries.  (*Id.* at 64-65.)  After his children are at school, Jones would do chores around the house and volunteer at his church.  (*Id.* at 68-69.)  He testified he is no longer attending physical therapy because the VA ended his referrals.  (*Id.* at 70.)  Each month, he sees a VA mental health counselor.  (*Id.* at 71-72.)  He claims he has days at least twice a week where it is difficult for him to get out of bed due to the physical pain he is experiencing or because of his mental health.  (*Id.* at 77-78.)

On July 18, 2023, the ALJ determined Jones was not disabled and entitled to SSI or DIB.  (*Id.* at 37-50.)  On September 14, 2023, the Appeals Council declined review.  (*Id.* at 23-28.)  On November 13, 2023, Jones filed suit in the Northern District of Ohio.  (*See* Case. No. 23-cv-2203, Doc. 1.)  On April 12, 2024, the parties submitted a Joint Stipulation to Remand to the Commissioner requesting that "[o]n remand, the Appeals Council will instruct the [ALJ] to further consider the Plaintiff's claim, to include offering Plaintiff a new hearing, taking any further action necessary to complete the administrative record, and issuing a new decision."  (Doc. 14.)  The Motion was granted, and the case was remanded to the ALJ for a new hearing.  (Doc. 15.)

On July 9, 2024, the Appeals Council vacated the previous decision of the ALJ and ordered the resolution of the following issues: (1) the hearing decision does not contain an adequate evaluation of the claimant's TBIs; and (2) the hearing decision does not contain an adequate evaluation of the medical source opinions and prior administrative medical findings.  (*Id.* at 934-35.)  The Appeals Council also ordered the ALJ to: (1) further evaluate whether

Jones' TBI is severe; (2) give further consideration to the medical source opinions and prior administrative medical finings; and (3) give further consideration to Jones' maximum RFC.  (*Id.* at 935.)

### 2.    Second Hearing

On December 9, 2024, a second hearing was held before the same ALJ.  (*Id.* at 848-94.) A vocational expert was also present.  (*Id.* at 870.)  Jones testified he had tried several forms of employment since his last hearing.  Until August 2024, he worked as a wellness coach at a local YMCA and had opened a travel agency with his wife.  (*Id.* at 877-78, 880.)  He also volunteered at his church and is a member of the local school board.  (*Id.* at 880.)  He reported stress-related headaches several times a month and that since leaving the military he has had trouble maintaining structure in his life.  (*Id.* at 882, 888-89.)

On January 3, 2025, the ALJ found that Jones was not disabled and entitled to SSI and DIB.  (*Id.* at 841-61.)  The ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2025.

2. The claimant has not engaged in substantial gainful activity since October 9, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lumbosacral arthritis, minimal right hip arthritis, status post bilateral hip surgeries for labral tears, posttraumatic stress disorder, anxiety, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could never climb ladders, ropes, or scaffolds. He could occasionally climb ramps or stairs. He could

occasionally stoop, kneel, or crouch. He could never crawl. He could occasionally balance. He should avoid unprotected heights, commercial driving, and hazardous machinery. He should avoid work in a very loud environment. He should avoid extreme cold and extreme heat. He should avoid concentrated exposure to vibrations. He can understand, carry out, and remember simple instructions. He cannot perform work requiring a specific production rate pace, such as assembly-line work or an hourly production quota. He can meet production requirements that allow a flexible and goal-oriented pace. He can maintain the focus, persistence, concentration, pace, and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods. He can work in a routine work environment with no greater than occasional changes. He could tolerate occasional interactions with supervisors, coworkers, and the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 27, 1979 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 9, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## E.    Appeal of ALJ Decision

On May 1, 2025, Jones filed the instant case.  (Doc. 1.)  He raised four assignments of

error:

1. The ALJ's residual functional capacity appraisal reflects legal error and lacks support from substantial evidence secondary to a failure to meaningfully consider and account for the residuals of Plaintiff's traumatic brain injury.

2. The ALJ's determination reflects legal error and lacks support from substantial evidence secondary to her failure to abide by the regulations governing the consideration of opinion evidence as well as unsupported findings made by the adjudicator in the course of appraising the persuasiveness of the opinion evidence of record.

3. The ALJ failed to abide by the Appeals Council's remand order.

4. The ALJ's decision is not supported by substantial evidence and the Commissioner's position is not substantially justified.

(Doc. 6 at 1170.)  Jones argued that, despite the Appeals Council's order, the ALJ's decision did not explain how his TBI and its related symptoms were factored into the RFC.  (*Id.* at 1172.)  In addition, Jones argued the ALJ committed reversible error when considering the medical opinions of Wood, Schelzig, Krabbe, Delcour, and Haskins, specifically as it relates to not adopting their findings and addressing their consistency and supportability.  (*Id.* at 1174-84.)

On November 20, 2025, Magistrate Judge Sheperd recommend this Court affirm the Commissioner's decision.  (Doc. 10.)  The R&R assessed the ALJ's determination that Jones' TBI was not severe was supported by substantial evidence, and then noted that the ALJ complied with the Appeals Council's order by considering his TBI and other injuries when determining his RFC.  (*Id.* at 1236.)  The R&R also addressed the ALJ's reliance on the medical opinions of Wood, Schelzig, and Krabbe.  It noted that the ALJ addressed both the consistency and supportability factors of each and evaluated their persuasiveness.  This finding was supported by substantial evidence.  (*Id.* at 1238, 1240, 1243.)  Lastly, the R&R agreed with the Commissioner that the ALJ properly evaluated the findings of state agency reviewing psychologists Delcour

and Haskins, and that she adopted their restrictions in her RFC determination, even though she used different terminology. (*Id.* at 1246.)

Jones timely raised six objections:

1. The ALJ's failure to meaningfully consider and account for Plaintiff's TBI when appraising his residual functional capacity represents error regardless of whether or not the impairment was properly classified as non-severe at step two.

2. The ALJ fails to properly explain her application of the supportability factor to the explanations provided by SPT Wood in support of his opinions.

3. The ALJ did not explain how the daily activities she tallies conflict with the opinion evidence of record or otherwise create a logical bridge between the evidence cited and her conclusions regarding functional restrictions.

4. The ALJ did not appraise the persuasiveness of Dr. Schelzig's 2024 opinion or otherwise meaningfully account for the same in her analysis.

5. The "moderate" paragraph B ratings from Dr. Schelzig are not indicative of the presence or absence of specific functional restrictions.

6. The ALJ did not reasonably account for the purportedly persuasive limitations identified by Drs. Delcour and Haskins.

(Doc. 11 at 1250-54.)

## II.     ANALYSIS

### A.     Legal Standard

#### 1.     Reviewing Objections to an R&R

A district court "shall make a *de novo* determination of those portions or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (flush language); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, 1994 U.S. App. LEXIS 35044, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted).

"A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C) (flush language).

Objections that simply restate arguments asserted in the briefs and addressed in the Report and Recommendation constitute general objections.  *Middleton v. Octapharma Plasma, Inc.*, No. 19-1943, 2020 WL 5000070, 2020 U.S. App. LEXIS 9585, *3 (6th Cir. Mar. 26, 2020).  That is, objections that "simply repeat[], in general fashion, the argument presented to—and rejected by—the Magistrate Judge" do not trigger *de novo* review.  *Lanning v. Comm'r of Soc. Sec.*, No. 20-cv-1676, 2022 WL 122643, 2022 U.S. Dist. LEXIS 7196, at *10 (N.D. Ohio Jan. 13, 2022) (collecting cases).  General objections are "tantamount to no objection at all" and do not receive *de novo* review.  *Id.*; *see also Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991) (recognizing that general objections duplicating the time and effort of the district court and magistrate judge waste judicial resources).

To receive *de novo* review of portions of a Report and Recommendation, the stated objection must "address specific concerns" with the Report and Recommendation in order to "focus attention on those issues . . . that are at the heart of the parties' dispute."  *Howard*, 932 F.2d at 509 (quoting *Thomas v. Arn*, 474 U.S. 140, 147, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985)).  "An objection preserves an issue when it explains and cites specific portions of the report which counsel deems problematic."  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (internal quotations and alterations omitted).  "[V]ague, general, or conclusory objections do not meet the requirement of specific objections. . . ."  *Frias v. Frias*, No. 18-cv-00076, 2019 WL 549506, 2019 U.S. Dist. LEXIS 22682, *6 (M.D. Tenn. Feb. 12, 2019) (quoting *Cole v. Yukins*, 7 F. App'x. 354, 356 (6th Cir. 2001)).

New objections or arguments not presented to the Magistrate Judge are not reviewable. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).  That is, "[t]he party objecting to an R&R cannot raise in the district court a new argument or issue that was not presented to the Magistrate Judge."  *Oberacker v. Noble*, No. 17-cv-2547, 2018 WL 2772501, 2018 U.S. Dist. LEXIS 97636, at *3 (N.D. Ohio June 11, 2018).  The failure to raise objections or arguments to the Magistrate Judge constitutes waiver.  *Murr*, 200 F.3d at 902 n.1.

### 2.      Reviewing Disability Determinations

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A).  In making a disability determination, an ALJ engages in a five-step sequential evaluation:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled. To be severe, the claimant must have a severe medically determinable physical or mental impairment, or a combination of impairments, that must have lasted or be expected to last for at least 12 months, unless it is expected to result in death.

3. If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment in Appendix 1 to Subpart P of Part 404, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the

claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 426 (6th Cir. 2018) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)).

During the first four steps, the claimant bears the burden of proof. *Walters*, 127 F.3d at 529. The "burden shifts to the Commissioner only at step five." *Id.*

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)). "The standard 'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Edwards v. Comm'r of Soc. Sec.*, No. 23-5490, 2024 WL 2705000, 2024 U.S. App. LEXIS 3315, at *3-4 (6th Cir. Feb. 12, 2024) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*)). If substantial evidence supports the Commissioner's finding that the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently. *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted).

A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted).  The Commissioner's decision must be affirmed even if the claimant's position is also supported by substantial evidence.  *Wallace v. Comm'r of Soc. Sec.*, 221 F.3d 1337 (Table), 2000 WL 799749, 2000 U.S. App. LEXIS 24244, at *1 (6th Cir. 2000) (citing *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).  "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**B.      First Objection: The ALJ did not Account for Jones' TBIs when Determining his RFC**

To the extent Jones seeks *de novo* review of the substantive conclusions in the R&R regarding his first objection, it fails because it merely repeats the same arguments made to the Magistrate Judge.  *See Lanning*, 2022 WL 122643, 2022 U.S. Dist. LEXIS 7196, at *10.  The R&R considered and rejected his arguments.  Notwithstanding, the record does not support his objection.

Jones does not challenge the ALJ's finding that his TBIs were not severe, nor does he contest the ALJ's RFC determination was not supported by substantial evidence.  (Doc. 11 at 1251.)  Rather, he requests remand "so that the ALJ might specifically consider and account for the TBI in appraising his [RFC]."  (*Id.*)  While the R&R determined that the ALJ complied with the Appeals Council's remand order to further consider Jones' TBI in her RFC, Jones claims the R&R makes no citations to the record to support this contention.  (Doc. 10 at 1236; Doc. 11 at

1250-51.)  Jones also argues the cases relied on in the R&R do not support the conclusion that the ALJ sufficiently addressed his TBIs.  (*Id.*)

On review, the Court finds that the R&R sufficiently cited to the record to support the contention that the ALJ complied with the Appeals Council's remand order to further consider Jones' TBI in her RFC.  The R&R first cited the ALJ's discussion of Jones' TBIs, including a recitation of the underlying incidents, treatment Jones sought, and his progress.  (Doc. 10 at 1235.)  The R&R then cited the ALJ's determination that from the record, Jones' TBI was non-severe.  (*Id.*)  Taken together, the R&R concluded the ALJ "articulated substantial evidence that supported her determination that the TBI was not a severe impairment[.]"  (*Id.*)  Finally, the R&R discussed that regardless of how the ALJ characterized Jones' TBI, as severe or non-severe, the ALJ stated "she took into account all impairments, severe or not, when assessing Jones' RFC."  (*Id.*)  From this, the R&R concluded: "As the ALJ properly considered all of Jones' impairments when determining his RFC, with specific attention paid to his TBI, she complied with the mandate of the Appeals Council order."  (*Id.* at 1236.)  Jones' objection that the R&R does not sufficiently cite to the ALJ's decision is without merit.

So too is Jones' objection that case law cited in the R&R does not support the Magistrate Judge's conclusion on this issue.  The R&R cited the ALJ's recitation of Jones' TBI, including the conclusion that it was non-severe.  (*Id.* at 1235.)  In so doing, the R&R cited the ALJ's reasoning which included "the remote nature of the injury, the treatment [Jones] has received to address the injury, and the limited ongoing symptoms [Jones] endures."  (*Id.*)  But even if the ALJ erred in determining his TBI as non-severe, the R&R explained, there was no reversable error nonetheless because the ALJ considered all impairments in crafting her RFC.  (*Id.*)  On this point, the R&R cited case law supporting this legal proposition.  *See Fisk v. Astrue*, 253 F. App'x

580, 583 (6th Cir. 2007); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013). There is nothing incorrect about the statement of law. Jones' objection, therefore, is without merit.

The ALJ was under no legal obligation to specifically mention Jones' non-severe impairments, including his TBI, because she made clear her decision was controlled by SSR 98-6p. *Emard*, 953 F.3d at 851-52; *see also Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025) (applying *Emard* and finding the ALJ's statement that they "considered all the symptoms" was sufficient in determining that non-severe impairments were considered in their RFC analysis). District courts interpreting *Emard* and *Napier* have found that, even where an ALJ does not reference a claimant's non-severe impairments in their RFC assessment, the ALJ's analysis may still satisfy SSR 96-8p if it: "(1) refers to SSR 96-8p in the decision; (2) discusses how the claimant's non-severe impairments functionally limit the claimant (if at all) at Step Two; and (3) provides a subsequent assurance that all symptoms and the entire record were considered when assessing an RFC." *Forsch v. Bisignano*, No. 24-cv-1365, 2025 WL 2307920, 2025 U.S. Dist. LEXIS 154189, at *22 (N.D. Ohio Aug. 11, 2025) (collecting cases). All three factors are met here. First, the ALJ states her RFC analysis is governed by SSR 96-8p. (*See* Doc. 5 at 846 (citing SSR 96-8p).) Second, at step two, the ALJ discussed how Jones' TBI had caused him "ongoing headaches, distraction, and being easily irritated by stimulation." (*Id.* at 847.) Third, on at least three occasions, the ALJ emphasized that she considered all of Jones' medically determinable impairments—severe or otherwise—in her decision, along with the entire record. (*Id.* at 846-47, 850.)

Jones' first objection is overruled.

C.      **Second Objection: The ALJ failed to Apply the Supportability Factor to the Explanations found in Wood's Opinions**

As an initial matter, Jones' objection reiterates the same argument made before the Magistrate Judge: that the ALJ insufficiently considered Wood's supporting explanations.  The Magistrate Judge considered this issue and rejected it.  Merely repeating the same argument presented and rejected in the R&R is insufficient.  *See Lanning*, 2022 WL 122643, 2022 U.S. Dist. LEXIS 7196, at *10.  For this reason alone, Jones' second objection is overruled.  That said, even considering the objection on *de novo* review, the record does not support Jones' argument.

Jones argues the ALJ did not adequately explain the supportability of Wood's opinions because she only addressed the objective medical evidence *and not* Wood's supporting explanations, as required by 20 C.F.R. §404.1520c(c)(1).  (Doc. 11 at 1252; *see also* Doc. 6 at 1174-75 (objecting to same).)  The R&R concluded the ALJ properly addressed the supportability factor, highlighting that she found the objective medical evidence did not support the restrictions suggested by Wood.  (Doc. 10 at 1239.)  To Jones, the R&R only cited to "examination findings documented by the provider (*i.e.*, the objective evidence presented by the source)," and no supporting explanations, warranting remand.  (Doc. 11 at 1251-52.)

Even if the Court were to consider the objection further, it is without merit.  Initially, it is not altogether clear Wood provided any supporting explanations for the ALJ to consider which underlies Jones' objection.  And Jones cites to none.  (*Id.*)  Wood's two medical opinions are, as the ALJ and R&R noted, questionnaires which provide little to no space for an explanation of his findings.  (Doc. 5 at 802-03, 807-10, 855.)  "[T]he Sixth Circuit has held that a checkbox physician opinion without explanation is 'patently deficient.'"  *Hunt v. Comm'r of Soc. Sec.*, No. 21-cv-00075, 2022 WL 4599246, 2022 U.S. Dist. LEXIS 177949, at *6 (N.D. Ohio Sept. 29, 2022); *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016).

Nonetheless, the ALJ's opinion indicates she considered the available supporting explanations of Wood alongside objective medical evidence.  The ALJ noted that Wood described "limited range of motion and weakness in the lumbar spine and hips."  (Doc. 5 at 856.)  This language is identical to Wood's explanation of Jones' symptoms in his 2023 opinion, although the ALJ does not directly cite to it.  (*Id.* at 802.)  Similarly, the ALJ mentioned Jones' "loss of sensation, guarding, and impaired weight-bearing," which Wood used to explain Jones' symptoms and clinical findings in his 2021 opinion.  (*Compare id.* at 856 *with id.* at 807.)  Similar findings are present throughout Woods' treatment notes.  (*Id.* at 468 (noting "frequent compensating and guarding"); *id.* at 1125 (describing lumbar spine and hip weakness).)  The ALJ further cited to several objective medical findings from Wood's treatment records which Jones does not dispute.  (*Id.*)  This shows the ALJ's assessment of the supportability factor was both procedurally sound and supported by substantial evidence.

Jones' second objection is overruled.

### D.    Third Objection: The ALJ did not Explain how the Daily Activities she Cited Created a Logical Bridge to her RFC Determination

Jones argues the ALJ did not create a "logical bridge" between the daily activities she cited and her RFC determination.  (Doc. 6 at 1252-53.)  Specifically, Jones takes issue with the ALJ's rejection of any absenteeism and time-off-task restrictions.  (*Id.* at 1252.)  To Jones, the ALJ's decision is "devoid of explanation as to how the cited activities demonstrate a capacity for sustained functioning," making them "incompatible with the limitations at issue."  (*Id.*)  He objects that the R&R did not meaningfully address this problem.  (*Id.*)

Jones did not raise this issue in his Brief on the Merits.  Therefore, the Magistrate Judge had no occasion to specifically address the issue he now raises.  For that reason alone, Jones'

third objection is overruled.  *Murr*, 200 F.3d at 902 n.1; *Oberacker*, 2018 WL 2772501, 2018 U.S. Dist. LEXIS 97636, at *3.

> **E.** **Fourth Objection: The ALJ did not Address the Persuasiveness of Schelzig's 2024 Opinion or Otherwise Account for it in her Analysis**

This objection reiterates the same argument made before the Magistrate Judge: that the ALJ failed to consider Schelzig's 2024 opinion in light of Schelzig's other opinions.  The Magistrate Judge considered this issue and rejected it.  Merely repeating the same argument presented and rejected in the R&R is insufficient.  *See Lanning*, 2022 WL 122643, 2022 U.S. Dist. LEXIS 7196, at *10.  For this reason alone, Jones' fourth objection is overruled.  Notwithstanding, even considering the objection on *de novo* review, the record does not support Jones' argument.

Jones argues the ALJ failed to appraise the persuasiveness of Schelzig's 2024 opinion and did not properly account for it when drawing conclusions regarding Schelzig's other opinions.  (Doc. 11 at 1253.)  In turn, Jones argues the R&R similarly does not account for the ALJ's neglect of the 2024 opinion.  (*Id.*)  The R&R noted the ALJ must have considered it because she cited to it in her analysis of Schelzig's findings.  (Doc. 10 at 1240.)  To Jones, this determination is insufficient because the "Magistrate Judge does not address that the ALJ's subsequent description of Schelzig's opinions is incompatible with any implied accounting for the 2024 opinion."  (Doc. 11 at 1253.)

An ALJ is "not required to articulate how [they] considered each medical opinion or prior administrative medical finding from one medical source individually."  *Daniels v. Comm'r of Soc. Sec.*, No. 19-cv-2946, 2020 WL 6913490, 2020 U.S. Dist. LEXIS 219908, at *25 (N.D. Ohio Nov. 24, 2020).  "In other words, the regulations do not require a separate, individual persuasiveness analysis for every medical opinion from a single source, but they do expect the

ALJ to articulate how she considered the multiple 'medical opinions . . . together in a single analysis." *Johnson v. Comm'r of Soc. Sec. Admin.*, No. 25-cv-00658, 2026 WL 874119, 2026 U.S. Dist. LEXIS 68832, at *39-40 (N.D. Ohio Mar. 31, 2026) (citing 20 C.F.R. § 404.1520c).

The ALJ—and the R&R—did so here.  The ALJ cited to Schelzig's three medical opinions in 2021, 2023, and 2024.  (Doc. 5 at 858.)  The ALJ discussed findings from the 2024 opinion which concluded Jones may be absent from work at least one day per month.  (*Id.*; *see also id.* at 1032.)  The ALJ must be referring to the 2024 opinion because neither the 2021 nor 2023 opinions make this determination.  (*See id.* at 804, 811-12.)  Schelzig's finding that Jones would be off task due to physical/psychological problems 15% of the day is also mentioned in his 2024 opinion.  (*Id.* at 1032.)  So too are the mild limitations in Jones' ability to learn, recall, or use information to perform work activities that are mentioned by the ALJ.  (*Id.* at 858; *see also id.* at 1034.)  While Jones argues the ALJ's "subsequent description of Dr. Schelzig's opinions is incompatible with any implied accounting for the 2024 opinion," this assertion is incorrect.  (Doc. 11 at 1253.)  The ALJ makes clear reference to the 2024 opinion on multiple occasions before discussing the persuasiveness of Schelzig's opinions as a whole, which is unchallenged by Jones.

Jones' fourth objection is overruled.

### F.  Fifth Objection: Schelzig's Paragraph B Ratings are not Indicative of the Presence or Absence of Specific Functional Limitations

This objection is a specific objection to the R&R.  Therefore, the Court conducts *de novo* review of the objection raised.  Jones argues the ALJ improperly concluded Schelzig's opinions regarding absenteeism and time-off task were inconsistent with Schelzig's ratings of the paragraph B criteria.  (Doc. 11 at 1254.)  Essentially, Jones argues that, pursuant to the regulations, "[P]aragraph B criteria ratings do not correlate with the presence or absence of

specific [RFC] restrictions."  (*Id.* at 1253-54.)  To Jones, Schelzig—who is not the ALJ—erroneously made Paragraph B findings which the ALJ later used in Jones' RFC assessment.  (*Id.*)  In turn, Jones argues the R&R, in accepting the ALJ's conclusion on this issue, failed to sufficiently explain why the ALJ was correct.  (*Id.*)

The Social Security regulations expressly spell out how ALJs must evaluate mental impairment severity.  20 C.F.R. § 404.1520a.  First, an ALJ must evaluate the record to determine if a claimant has medically determinable mental impairments.  20 C.F.R. § 404.1520a(b)(1).  Second, the ALJ must "rate the degree of functional limitation resulting from" those impairments within four broad functional areas, known as the "paragraph B" criteria.  20 C.F.R. § 404.1520a(b)(2).  "Those four areas are: (a) understanding, remembering, or applying information; (b) interacting with others; (c) concentrating, persisting, or maintaining pace; and (d) adapting or managing oneself."  *Young v. Comm'r of Soc. Sec.*, No. 23-cv-01435, 2024 WL 3715441, 2024 U.S. Dist. LEXIS 140699, at *4 (N.D. Ohio Aug. 8, 2024) (citing 20 C.F.R. § 404.1520a(c)(3)).  If the claimant's limitations are "mild" or less for each area, the claimant's mental impairments are usually non-severe.  20 C.F.R. § 404.1520a(d)(1).

Paragraph B criteria "are not an RFC assessment but are used to rate the severity" of a mental impairment at steps two and three of the evaluation process.  SSR 96-8p, 1996 WL 374184, at *4.  "Rather, a claimant's RFC is formulated at Steps Four and Five, 'which requires a more detailed assessment by itemizing the various functions contained in the broad categories found in paragraphs B and C.'"  *James v. Comm'r of Soc. Sec.*, No. 19-cv-570, 2020 WL 836493, 2020 U.S. Dist. LEXIS 28813, at *29 (N.D. Ohio Feb. 20, 2020) (citing SSR 96-8p, 1996 WL 374184, at *4).

While Jones correctly asserts that "both Social Security's own rules and applicable case law readily affirm that paragraph B criteria ratings do not correlate with the presence or absence of specific [RFC] restrictions," that is not what took place here.  The "moderate" limitations assessed by Schelzig and mentioned by the ALJ come from his three medical opinions and not any alleged Paragraph B determination he might have made.  The ALJ cites these findings, and not her own Paragraph B determinations, in her assessment of Schelzig's opinions.  (Doc. 5 at 804-06, 858, 1032-34.)  In any event, Schelzig's opinions and the ALJ's Paragraph B findings often differ.  (*Compare id.* at 849 *with id.* at 805-06, 1033-34.)  Thus, the ALJ did not erroneously apply her own Paragraph B findings as an RFC assessment.

Jones' fifth objection is overruled.

### G.      Sixth Objection: The ALJ did not Account for the Limitations Identified by State Agency Reviewing Psychologists

This objection reiterates the same argument made before the Magistrate Judge: that the ALJ failed to adopt certain limitations identified by the state agency reviewing psychologist.  The Magistrate Judge considered this issue and rejected it.  Merely repeating the same argument presented and rejected in the R&R is insufficient.  *See Lanning*, 2022 WL 122643, 2022 U.S. Dist. LEXIS 7196, at *10.  For this reason alone, Jones' sixth objection is overruled.  Notwithstanding, the objection lacks merit.

Jones' takes issue with the ALJ allegedly not adopting two limitations identified by state agency reviewing psychologists Delcour and Haskins: (1) that Jones work in a "non-crowded" environment and (2) that he can complete "short cycle work tasks."  (Doc. 6 at 1183-84; Doc. 11 at 1254-55.)  Jones argues the ALJ did not explain why these restrictions were not adopted even though she found Delcour and Haskins' findings "generally persuasive."  (Doc. 5 at 857.)  The R&R determined the ALJ adopted these recommendations by converting them into "vocationally

relevant terms" when assessing Jones' RFC.  (Doc. 10 at 1245-65 (citing Doc. 5 at 857).)  To Jones, converting these restrictions into vocationally relevant terms caused the ALJ to adopt restrictions not fully supported by Delcour and Haskins, while failing to explain her departure from their recommendations.  (Doc. 11 at 1255.)

"The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010); 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity.").  "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."  *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).  In addition, an ALJ "is not required to explain [her] reasons for declining to include certain limitations in a state agency reviewing psychologist opinion."  *Mullins v. Comm'r of Soc. Sec.*, No. 20-cv-747, 2021 WL 2524971, 2021 U.S. Dist. LEXIS 114659, at *7-8 (N.D. Ohio June 21, 2021) (citing *Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016)).

As an initial matter, both Delcour and Haskins are state agency reviewing psychologists, and the ALJ need not explain why she did not adopt their limitations.  *Mullins*, 2021 WL 2524971, 2021 U.S. Dist. LEXIS 114659 at *7-8.  Notwithstanding, the ALJ adopted their limitations, although not verbatim.  Accordingly, the Magistrate Judge did not commit error by finding the ALJ converted the findings into vocationally relevant terms.

First, the ALJ adopted their limitation that Jones is capable of work in a "non-crowded environment."  (Doc. 5 at 850; *id.* at 95.)  Delcour and Haskins wrote "C[laimant] can interact with others on an occasional and infrequent basis, in a non-crowded environment."  (*Id.* at 95,

120.) Finding their opinions persuasive, the ALJ limited Jones to "occasional interactions with supervisors, coworkers, and the general public," meaning less than one-third of the time or in total "no more than about 2 hours of an 8-hour workday." (Doc. 5 at 850.) Jones contends this limitation says nothing about whether his work environment would be "crowded," and the ALJ failed to explain why this portion of the limitation was not adopted. (Doc. 11 at 1254.) The limitation of occasional interactions with supervisors, coworkers, and the general public accounts for this limitation and does not countenance remand. (Doc. 10 at 1246.) The ALJ was also under no obligation to adopt this limitation verbatim or to explain her reasons for not adopting it wholesale. *White*, 970 F. Supp. 2d at 753. That she converted the limitation into "more vocationally relevant terminology" is no legal error. (Doc. 5 at 857.)

Second, and similarly, the ALJ adopted Delcour and Haskins' limitation to "short cycle work tasks," although not verbatim. Delcour and Haskins wrote "[t]he [claimant] can complete short cycle work tasks that are routine and predictable and do not require him to work at a fast pace to meet strict time or production demands." (*Id.* at 95, 120.) In her RFC determination, the ALJ found Jones "cannot perform work requiring a specific production rate pace, such as assembly-line work or an hourly production quota." (*Id.* at 850.) He is also limited to working in a "routine work environment with no greater than occasional changes." (*Id.*) The ALJ also restricted Jones to tasks "for two-hour increments." (*Id.*) Again, converting the limitation was no legal error.

Jones' sixth objection is overruled.

### III.    CONCLUSION

For the reasons herein, Plaintiff Gregory Shane Jones' objections are OVERRULED.

The Report and Recommendation is ACCEPTED and ADOPTED, and the final decision of the

Commissioner of Social Security is AFFIRMED.


**IT IS SO ORDERED.**


Date:    July 21, 2026                                                     _____

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE